IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LESLIE C.,[1] ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil No. 3:22-cv-00653-REP-SLS |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of the ) | |
| Social Security Administration,[2] ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

In this action, Plaintiff Leslie C. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 10, 13.) The motions have been fully briefed (ECF Nos. 10, 11, 13, 14), rendering this matter ripe for review.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (Plaintiff's Memorandum of Law in Support of a Motion for Summary Judgment (ECF No. 11) ("Pl.'s Mem.") at 13.) As the basis for such relief, Plaintiff argues that

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination is not supported by substantial evidence because he improperly evaluated the medical opinion of Sailatha Bobba, M.D. ("Dr. Bobba"). (Pl.'s Mem. at 6-13.) In response, Defendant argues that the ALJ properly considered and analyzed the opinion in accordance with the regulations and the Commissioner's final decision should be affirmed. (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 13) ("Def.'s Mem.") at 13-20.)

For the reasons set forth below, this Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations and that substantial evidence supports the ALJ's RFC findings. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and SSI on August 28, 2020, alleging disability beginning on December 10, 2019. (Administrative Record ("R.") at 91, 194, 218.)[3] In her application, Plaintiff alleged that she suffers from bipolar disorder, post-traumatic stress disorder ("PTSD"), and major depressive disorder. (R. at 218.) The SSA denied Plaintiff's claims initially and again upon reconsideration. (R. at 116-24, 131-37.) Plaintiff requested a hearing before an ALJ, and one was held on March 17, 2022. (R. at 34-62, 154-59.)

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

On March 30, 2022, the ALJ issued a written opinion, finding Plaintiff not disabled under the Social Security Act ("the Act"). (R. at 15-27.) On August 9, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II.   STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the

3

claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given his or her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472. If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the

4

Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III. THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process. (R. at 15-27.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 10, 2019 (the alleged onset date). (R. at 18.) At step two, the ALJ determined Plaintiff suffered from the following severe impairments: degenerative disk disease, osteoarthritis, sprain in spinal ligaments, obesity, bipolar disorder, borderline personality disorder, and PTSD. (R. at 18.) At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-21.)

In assessing whether Plaintiff's mental impairments met the criteria of the listings, the ALJ determined Plaintiff had mild limitation in understanding, remember, or applying information and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. In so finding, the ALJ acknowledged Plaintiff's testimony that she struggled with memory, concentration, comprehension, completing tasks, and following instructions, but found that the evidence showed to the contrary that she could care for her personal hygiene needs, cook, watch television, complete household chores, care for pets, maintain medical appointments, read, and journal. (R. at 20.) The ALJ pointed out Plaintiff's reluctancy to socialize or interact with crowds of people, but also noted that she remains able to drive, go to the grocery store, interact with family, and maintain regular medical appointments. (R. at 20.) The ALJ also noted that Plaintiff can handle stress and adjust to changes, despite her contention otherwise, as evidenced through her ability to prepare meals, grocery shop, drive, visit with others virtually and in person, play games on her phone, and attend medical appointments. (R. at 20.)

The ALJ then determined Plaintiff's RFC. (R. at 21-25.) Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] can lift and/or carry twenty pounds occasionally and ten pounds frequently, [Plaintiff] can sit 6 hours, and stand and/or walk six hours in an eight hour workday, [Plaintiff] can occasionally climb ramps and stairs; never climb ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch; occasionally crawl; occasional exposure to extreme cold; fingering (fine manipulation) is limited to frequent with the bilateral upper extremities; operation of foot controls is limited to occasional with the bilateral lower extremities; able to concentrate in the workplace for two (2) hours before requiring a break; limited to perform simple, routine tasks; frequently interact with supervisors and co-workers; occasionally interact with the general public; frequently respond appropriately to changes in a routine work setting; she must have no fast paced production quotas, but rather goal-oriented work.

(R. at 21.)

The ALJ explained that he determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. at 21.) Plaintiff challenges only the ALJ's mental RFC, so the Court limits its analysis to that portion of the above RFC.

In arriving at the RFC, the ALJ summarized Plaintiff's subjective complaints and statements concerning limiting effects of her symptoms as follows:

> [Plaintiff] testified that she does not believe she can work due to problems with her hands, back and knees. She does not like to be around crowds but can drive and shop in stores as needed. Sometimes she takes her daughter to the store but does not like to drive. She last drove a vehicle the day prior to the hearing. She does not attend social activities and religious gatherings often, mostly due to the distance of driving to them. She is able to care for her personal needs independently and is able to eat with a fork and knife. She gets headaches when looking at computer screens. Elsewhere, she noted that she is very tired and spends a large percentage of time asleep. She cares for animals, prepares meals, clean[s] and does other household chores although she has little energy to do them and has to be reminded by others to complete [them]. She shops in stores and by computer and can manage her financial affairs. She overspends money. She engages in hobbies of reading, writing and photography. She spends time with others in person, on the phone, by email, by testing, by video chat and through the mail. She attended church prior to covid19. She has difficulty concentrating and completing tasks. She does not handle stress and changes in routine. She is anxious and worried about what others think of her.

(R. at 22 (internal record citations omitted).) The ALJ found Plaintiff's statements about "the intensity, persistence and limiting effects of these symptoms . . . not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 22.) The ALJ then undertook a review of the medical evidence for both Plaintiff's physical and mental impairments, analyzed Plaintiff's daily activities, and assessed medical opinion evidence. (R. at 22-25.)

Regarding her mental impairments, the ALJ acknowledged that Plaintiff described ongoing symptoms despite treatment, "including sadness, periods of anxiety, trouble concentrating, difficulty sleeping, and passive suicidal ideation." (R. at 22.) However, examinations in general were unremarkable aside from mood and affect disturbances. (R. at 22-23.) Examinations described Plaintiff as cooperative, displaying good memory, attention, and concentration, and having fair judgment and insight. (R. at 23.) Plaintiff "related being essentially bored and had plans to" engage in volunteer work. (R. at 23.) Plaintiff also reported gardening, walking and journaling, and an intent to write a book. (R. at 23.) She also performed a wide range of daily activities "that require her to sustain concentration, follow instructions, and relate to others," including "driving, shopping in stores, attending medical appointments independently, reading and preparing meals." (R. at 23.) In addition, healthcare providers described Plaintiff as "pleasant and cooperative." (R. at 23.) Plaintiff also "related that prescribed medications were helping with her symptoms." (R. at 23 (internal record citations omitted).) The ALJ further noted that "the evidence suggests that medications and therapy have been effective at reducing her symptoms, and outside of this, she has not required mental hospitalizations or more intensive outpatient treatment." (R. at 23.) Altogether, the ALJ determined that "this information implies that [Plaintiff's] mental impairments are not as problematic as she alleges." (R. at 23.) The ALJ found that Plaintiff's mental impairments "prevent her from performing complex, fast-paced work activities, and affect her abilities to tolerate workplace changes and interact with others." (R. at 22.)

The ALJ then "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 46.920c." (R. at 21.) The ALJ considered opinions from Disability Determination Services ("DDS") medical

consultants. (R. at 24.) These consultants opined that Plaintiff "has severe mental impairments that impose moderate limitations in interaction with others; concentration, persistence, and pace; and adapting and managing oneself." (R. at 24.) The ALJ found that the evaluators supported their opinions with narrative reviews of the evidence and found their opinions generally consistent with the medical evidence. (R. at 24.) Thus, the ALJ found these opinions to be generally persuasive with respect to Plaintiff's mental limitations. (R. at 24.)

The ALJ also reviewed the opinions of DDS psychological evaluators, who reported that Plaintiff is "limited to carrying out short and simple instructions and making simple work-related decisions." (R. at 24.) The ALJ found these opinions partially persuasive, as the evaluators supported their opinions with narrative reviews of the record, which the ALJ noted were somewhat consistent with the remainder of the medical evidence. (R. at 24.)

The ALJ next weighed the medical opinion of Dr. Bobba, who submitted a Medical Source Statement completed in February 2022. (R. at 24-25.) Dr. Bobba concluded that Plaintiff had marked to extreme limitations in understanding and memory, maintaining concentration for extended periods of time, social interaction, and adaptation. (R. at 24.) Dr. Bobba also noted that Plaintiff would miss four or more days of work per month. (R. at 24.) In considering Dr. Bobba's medical opinion, the ALJ explained:

> Dr. Bobba supported h[er] opinion with h[er] office notes, but it is not consistent with her treatment notes or with the record as a whole. As indicated above, [Plaintiff] related that medications were helping her symptoms and that she was able to frequently socialize with others through various methods and could also drive, shop in stores, attend medical appointments independently and perform cooking and household chores. Further, clinicians observed her to be cooperative and pleasant and did not recite specific difficulties relating to her. This suggests that while [Plaintiff] has some limitations related to her mental conditions, they are not of the extent advanced here. Therefore, the undersigned finds this opinion not generally persuasive.

(R. at 24.)

After completing the RFC assessment, the ALJ then determined Plaintiff's vocational factors. He found that Plaintiff was unable to perform any past relevant work (namely, prior professions as an order clerk, a program aide in social service, and an administrative assistant), met the definition of a younger individual, and had at least a high school education. (R. at 25.)

At step five, the ALJ concluded that there were jobs in significant national numbers that Plaintiff could perform given her limitations. (R. at 25-26.) The ALJ adopted the Vocational Expert's testimony that Plaintiff could perform the jobs of cleaner, mail sorter, and sorter. (R. at 26.)

## IV. ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence. *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340). "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons that follow, this Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations, and substantial evidence supports the ALJ's RFC determination.

### A. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. This framework applies in Plaintiff's case. (*See* Pl.'s Mem. at 7.) The revised regulations provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, no matter the source. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a).

Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id.* §§ 404.1520c, 416.920c(b)-(c). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

11

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2).

### B. Dr. Bobba's Medical Opinion

Dr. Bobba first began treating Plaintiff on December 8, 2021.  (R. at 1270.)  Two months later, she submitted a Medical Source Statement dated February 9, 2022, wherein she listed Plaintiff's diagnoses as bipolar disorder and PTSD.  (R. at 24, 1154.)  Dr. Bobba concluded that Plaintiff had marked limitations in understanding simple instructions, carrying out simple and detailed instructions, sustaining a routine without special supervision, maintaining concentration for extended periods of time, working with others without distraction, interacting with the general public, and getting along with coworkers.  (R. at 1154.)  She noted that Plaintiff had extreme limitations in asking questions or requesting assistance, responding to criticism and direction from supervisors, adapting to changes in work setting, and responding to normal levels of stress.  (R. at 1154.)  Dr. Bobba opined that Plaintiff had the following symptoms: anxiety attacks, paranoia, decreased energy, difficulty concentrating/focusing, mood instability, lack of impulse control, sleep impairment, and feelings of guilt/worthlessness.  (R. at 1154.)  Lastly, Dr. Bobba noted that Plaintiff has missed more than four days per month of work in the past, and that Plaintiff personally "estimates missing at least 10 days/month."  (R. at 1154.)

### C. The ALJ Applied Correct Legal Standards in Evaluating Dr. Bobba's Opinion and Substantial Evidence Supports the ALJ's Determinations

Plaintiff argues that the RFC determination was not supported by substantial evidence because the ALJ improperly rejected Dr. Bobba's opinion evidence.  (Pl.'s Mem. at 8.)  Specifically, Plaintiff argues that the ALJ: (1) failed to explain how Plaintiff's daily activities and

treatment notes conflicted with Dr. Bobba's opinion; (2) failed to explain how Plaintiff's behavior towards clinicians conflicted with Dr. Bobba's opinion; and (3) cherry-picked information regarding the impact of Plaintiff's medication. (Pl.'s Mem. at 8.) The Court addresses each argument below and finds no reversible error in the ALJ's opinion.

The ALJ sufficiently explained how Plaintiff's daily activities and treatment notes conflicted with Dr. Bobba's opinion. The ALJ stated that, contrary to Dr. Bobba's office notes or medical opinion, the record showed that Plaintiff could interact and socialize with others, drive, shop in stores, attend medical appointments by herself, cook, and partake in household chores. (R. at 24.) These activities "require [Plaintiff] to sustain concentration, follow instructions, and relate to others." (R. at 23.) In treatment notes, Plaintiff also reported gardening, walking and journaling, plans to write a book, and otherwise "being essentially bored" with plans to perform volunteer work. (R. at 23.) Treatment notes also generally showed unremarkable mental status examinations, other than disturbances in mood and affect, with good memory, attention and concentration, and fair judgment and insight. (R. at 23.) The ALJ explained that "this suggests that while [Plaintiff] has some limitations related to her mental conditions, they are not of the extent advanced here." (R. at 24.)

Plaintiff nevertheless accuses the ALJ of failing to "explain *how* these treatment notes or daily activities conflicted with the opinion." (Pl.'s Mem. at 8 (emphasis in original).) Plaintiff cites *Brown v. Commissioner of Social Security Administration*, 873 F.3d 251 (4th Cir. 2017) to support her argument. (Pl.'s Mem. at 8-9.) In *Brown*, the Fourth Circuit took issue with the ALJ's portrayal of the plaintiff's limitations, namely that the plaintiff could cook, drive, do laundry, collect coins, attend church, and shop, but failed explain "how those particular activities—or any of the activities depicted by [the plaintiff]—showed that he could persist through an eight-hour

13

workday." 873 F.3d at 269-70. Here, Plaintiff asserts that like *Brown*, the ALJ failed to explain how the listed daily activities indicated an ability to work an eight-hour day, and thus failed to build a logical bridge between the evidence and his conclusion. (Pl.'s Mem. at 8-9.) The Court finds *Brown* distinguishable.

As an initial matter, the ALJ explained that he analyzed the daily activities among other evidence in the record to determine whether Plaintiff could understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself during an eight-hour workday. The ALJ found that Plaintiff's daily tasks and activities, combined with "the objective findings contained in the record, the conservative care she has received, [and] her statements to providers for treatment purposes" *all* suggest her symptoms are not as severe nor as limiting as she claims. (R. at 23.) In other words, the ALJ considered the daily activities, among other relevant evidence, in determining the level of limitations suffered by Plaintiff given her mental impairments. Ultimately, the ALJ found that the daily activities supported Plaintiff's ability to perform light work with the added conditions that she be provided breaks every two hours, could only perform simple, routine tasks, could only occasionally interact with the general public, and could not perform fast-paced production work. (R. at 21.) The ALJ did not err in referencing Plaintiff's daily activities as one part of his overall evaluation of Plaintiff's RFC. *See Anthony R.W. v. Kijakazi*, 2022 WL 3702925, at *5 (E.D. Va. July 20, 2022), *report and recommendation adopted by* 2022 WL 3702254 (E.D. Va. Aug. 26, 2022) (distinguishing the facts from *Brown* because the ALJ referenced Plaintiff's daily activities as just one aspect of his RFC assessment).

Second, unlike in *Brown*, the ALJ here did not ignore qualifiers that accompanied Plaintiff's daily activities. *See Brown*, 873 F.3d at 263 (internal quotations omitted) (noting that

14

the ALJ failed to acknowledge the "limited extent of those activities as described by [the plaintiff]," for example that the plaintiff "simply prepared meals in his microwave, could drive only short distances without significant discomfort, [and] only occasionally did laundry and looked at coins…"). Indeed, at the hearing, the ALJ asked clarifying questions regarding Plaintiff's ability to prepare meals, and Plaintiff responded that "[s]ometimes, I have to put light dishes in the dishwasher or [her ex-husband or daughter] usually cook because I have problems following recipes." (R. at 40.) In response to a question about her ability to follow a television show, Plaintiff stated that she can follow the story "[f]or the most part… but, occasionally, [gets] distracted, and [misses] parts of it . . . ." (R. at 47.) The ALJ also acknowledged in his opinion that Plaintiff does not attend social or religious gatherings because she does not *like* to drive, not because she is *unable* to drive. (R. at 22 (emphasis added).) The ALJ further acknowledged that Plaintiff reads, writes, partakes in photography, and shops in person and online to the point of "overspend[ing] money." (R. at 22.) She suffers from headaches if she looks at the computer screen for too long. (R. at 22.) She spends time with others in person, or video chat, and communicates with people over text, email, or through the mail. (R. at 22.) She "is able to care for her personal needs independently and is able to eat with a fork and a knife." (R. at 22.) Plaintiff "cares for animals, prepares meals, cleans and does other household chores although she has little energy to do them and has to be reminded by others to complete [them]." (R. at 22.) Thus, while the ALJ "may not have listed every single additional qualifying statement about the extent to which [the plaintiff] can perform daily activities, the ALJ did demonstrate that [he] adequately considered them and found them to be inconsistent with specific, objective evidence in the record." *Footman v. Kijakazi*, 2023 WL 1794156, at *2 (4th Cir. 2023). In doing so, the ALJ complied with applicable regulations and committed no error.

Next, Plaintiff argues that the ALJ improperly "selected findings from the record of Plaintiff exhibiting cooperative and pleasant behavior in a clinical environment to dismiss Dr. Bobba's opinion." (Pl.'s Mem. at 10.) The Court disagrees. The ALJ noted that Plaintiff's "mental status examinations are usually unremarkable, aside from disturbances in her mood and affect," and that clinicians "consistently describe her as pleasant and cooperative." (R. at 23.) A look at the exhibits cited by the ALJ (R. at 23) supports these statements: Plaintiff was described as "cooperative, pleasant, interactive" in June 2020 (R. at 558); "calm and cooperative. forthcoming. candid." in October 2020, January 2021, February 2021, March 2021, June 2021, and September 2021 (R. at 506, 1359, 1410, 1519, 1534, 1569); and "pleasant and cooperative" in January 2022 (R. at 1237). In addition to her demeanor, medical notes show that Plaintiff also reported anxiety, mood lability, and past suicidal thoughts to her clinicians, and the ALJ acknowledged these reports in his opinion. (R. at 23, 371-72, 1015.) While it is true that "symptoms of mental illness may wax and wane over the course of treatment," *Testamark v. Berryhill*, 736 Fed. App'x 395, 398-99 (4th Cir. 2018), the Court finds that the ALJ contemplated Plaintiff's cooperative and pleasant nature with clinicians as just one facet of his RFC determination, noting that all the information and evidence "*[t]ogether*… implie[d] that [Plaintiff's] mental impairments [were] not as problematic as she allege[d]" (R. at 23 (emphasis added)). The Court does not find that the ALJ cherry-picked "unremarkable behavior from clinical environments that were not at all representative of Plaintiff's behavior in a work environment." (Pl.'s Mem. at 11.) Rather, the ALJ analyzed Plaintiff's behavior at appointments as one part of his overall decision. While Plaintiff may disagree with the ALJ's decision, substantial evidence supports it, and the Court declines to reweigh the conflicting evidence. *See Hancock*, 667 F.3d at 472.

Lastly, Plaintiff claims that the ALJ cherry-picked information regarding the impact of her medications. (Pl.'s Mem. at 11.) The ALJ's decision shows otherwise. The ALJ acknowledged Plaintiff's reports of ongoing symptoms from her mental impairments, including "sadness, periods of anxiety, trouble concentrating, difficulty sleeping, and passive suicidal ideation." (R. at 22.) But the ALJ also stated that "while [Plaintiff] reports occasional suicidal ideation, anxiety, poor memory, and poor concentration, the evidence suggests that medications and therapy have been effective at reducing her symptoms . . . ." (R. at 23.) Plaintiff admits that she "relayed some symptom improvement in the medical record, [but] that this was not consistently the case." (Pl.'s Mem. at 10-11.) In any event, the ALJ did not cherry-pick the record by acknowledging Plaintiff's ongoing symptoms and finding based on his review of the evidence that medications helped to reduce the limiting effect of some symptoms. To the extent Plaintiff takes a different view of the evidence, the Court cannot reweigh conflicting evidence or substitute its judgment for that of the ALJ. *See Hancock*, 667 F.3d at 472; *Dunn*, 607 F. App'x at 274.

## V.  CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right**

**to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                              /s/
                                                    Summer L. Speight
                                                    United States Magistrate Judge

Richmond, Virginia
Date: January 8, 2024

18